1
2
3
4                  UNITED STATES DISTRICT COURT

5                NORTHERN DISTRICT OF CALIFORNIA

6                       SAN JOSE DIVISION

7

8    WEST MARINE PRODUCTS, INC,              Case No.  5:21-cv-01940-EJD

                        Plaintiff,           **ORDER GRANTING NATIONAL**
9            v.                              **UNION'S MOTION TO DISMISS;**
                                             **GRANTING IN PART**
10   NATIONAL UNION FIRE INSURANCE           **WESTCHESTER'S MOTION TO**
     COMPANY OF PITTSBURGH, PA, et al.,      **DISMISS**
11
                        Defendants.          Re: Dkt. Nos. 22, 23
12

13          In this insurance coverage dispute, Plaintiff West Marine Products, Inc. ("West Marine")

14   seeks coverage for two wage and hour lawsuits filed in state court:  *Adams v. West Marine*

15   *Products, Inc.*, San Mateo County Superior Court Case No. 19CIV00436 ("*Adams* Action") and

16   *Wade v. West Marine Products, Inc.*, Sonoma County Superior Court Case No. SCV-265874

17   ("*Wade* Action") (collectively, the "Underlying Actions")—under insurance policies issued by

18   Defendants National Union Fire Insurance Company of Pittsburgh, PA  ("National Union") and

19   Westchester Fire Insurance Company ("Westchester").  West Marine alleges that National Union

20   owes a duty to defend and indemnify it against the *Adams* Action, and that Westchester owes a

21   duty to defend and indemnify it against both Underlying Actions.

22          Defendants have filed separate motions to dismiss.  Dkt. Nos. 22, 23.  National Union

23   contends that there is no coverage for the *Adams* Action because (1) the alleged wage and hour

24   violations are not Claims for Loss "arising from" an "Employment Practices Violation" ("EPV"),

25   as that phrase is defined in the National Union Policy and (2) the Policy Exclusion,

26   "Compensation & Labor Liability," applies.  Dkt. No. 23.  Westchester argues that there is no

27

United States District Court
Northern District of California

United States District Court
Northern District of California

1 | coverage because the alleged wage and hour violations in the *Adams* and *Wade* Actions do not

2 | qualify as an "Employment Practices Wrongful Act," as that phrase is defined in the Westchester

3 | Policy.  In the alternative, Westchester contends that coverage for the *Adams* Action and at least a

4 | portion of the *Wade* Action are precluded by an exclusion in its Policy.  Dkt. No. 22.  Westchester

5 | also contends that it has no duty to defend in the Underlying Actions because its Policy provides

6 | that West Marine, not Westchester, has the duty to defend claims which are excluded in full or in

7 | part by any exclusion.  For the reasons discussed below, National Union's motion to dismiss is

8 | GRANTED, and Westchester's motion to dismiss is GRANTED in part.

9 | **I.     BACKGROUND**

10 | **A.     *Adams* Action**

11 | Adrianne Adams ("Adams"), a former West Marine employee, initiated the *Adams* Action

12 | in January 2019.  *See generally* Dkt. No. 1-1 at 400–428.  The *Adams* Complaint alleges ten

13 | causes of action: (1) failure to pay overtime wages in violation of California Labor Code ("CLC")

14 | §§510 and 1198; (2) failure to provide meal breaks in violation of CLC §§226.7 and 512(a); (3)

15 | failure to provide rest breaks in violation of CLC § 226.7; (4) failure to pay minimum wages in

16 | violation of CLC §§ 1194, 1197 and 11971.1; (5) failure to pay timely wages at termination in

17 | violation of CLC §§ 201, 202, and 203; (6) failure to timely pay wages during employment in

18 | violation of CLC § 204; (7) failure to provide accurate wage statements in violation of CLC §

19 | 226(a); (8) failure to keep accurate payroll records in violation of CLC § 1174(d); (9) violation of

20 | California Business & Professions Code section 17200 ("UCL") based on the alleged CLC

21 | violations; and (10) violation of CLC section 2699 *et seq.*, the Private Attorneys General Act

22 | ("PAGA") based on West Marine's alleged CLC violations.  *Id*. The *Adams* Complaint seeks

23 | restitution of unpaid wages, statutory damages, statutory penalties, interest, and attorneys' fees.

24 | *Id.* at 424–28.  The parties have reached a tentative settlement and are seeking court approval of

25 | the settlement.

26 | 

27 | 

28 |

1

**B.** *Wade* **Action**

2

Michael Wade ("Wade") filed the *Wade* Action in January of 2020, asserting a single

3

cause of action under PAGA.  Wade alleges that during his 15 years as an employee, "Defendants

4

engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or

5

non-exempt employees." *Id*. at 435.  Under the heading First Cause of Action, Wade alleges that

6

West Marine subjected employees to violations of the CLC by:  (a) failing to pay minimum wage

7

in violation of CLC §§ 1194 and 1198; (b) failing to pay overtime in violation of CLC §§ 204,

8

510, 1194, and 1198; (c) failing to provide and pay proper compensation for meal periods in

9

violation of CLC §§ 226.7 and 512; (d) failing to provide and pay proper compensation for rest

10

periods in violation of CLC §§ 226.7 and 512; (e) failing to pay wages at the end of employment

11

in violation of CLC § 203; (f) failing to pay wages in a timely manner during employment in

12

violation of CLC § 204; (g) failing to furnish complete, accurate, itemized wage statements in

13

violation of CLC § 226; (h) failing to maintain accurate records relating to work periods, meal

14

periods, total daily hours, hours per pay period, and applicable pay rates in violation of CLC §

15

1174; (i) failing to reimburse for necessary business-related expenses and costs in violation of

16

CLC §§ 2800 and 2802; and (j) failing to pay accrued but unused vacation time in violation of

17

CLC § 227.3.  *Id*. at 441-42.  Wade seeks statutory attorney's fees and costs, prejudgment interest,

18

and civil penalties.  *Id*. at 443.

19

**C.**   **West Marine's Coverage Dispute With National Union**

20

West Marine demanded coverage for *Adams* under National Union's Employment

21

Practices Liability Insurance Policy No. 02-880-15-42, which National Union issued to West

22

Marine's parent company for the December 1, 2016 to December 1, 2017 Policy Period, with a

23

six-year runoff endorsement from September 14, 2017 through September 14, 2023.  *Id*. at Ex. A.

24

National Union declined coverage, asserting that the *Adams* Action does not allege any EPV.  *Id*.

25

at 15, ¶ 61.  The National Union Employment Practices Liability Coverage provision states:

26

> This policy shall pay the Loss of each and every Insured arising from
> a Claim made against such Insured for any [EPV].

27

Case No.: 5:21-cv-01940-EJD

28

ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART
WESTCHESTER'S MOTION TO DISMISS

United States District Court
Northern District of California

*Id*. at 38.  A "Claim" is defined in pertinent part as a civil proceeding for monetary, non-monetary or injunctive relief that is commenced by a complaint.  *Id*. at 52.  The Policy defines EPVs as any actual or alleged:

> (1) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;
>
> \*   \*   \*
>
> (5) employment-related misrepresentation(s) to an Employee of any Organization;
>
> \*   \*   \*
>
> or
>
> (12) with respect to any of the foregoing items (1) through (11) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;
>
> but only if the Employment Practices Violation relates to an Employee of or an applicant for employment with an Organization or an Outside Entity, whether committed directly, indirectly, intentionally or unintentionally.

*Id*. at 54–55.

National Union also declined coverage on the basis of Policy Exclusion (6), which precludes coverage for Loss in connection with any Claim:

> (a) for any violation of responsibilities, obligations or duties imposed by the Fair Labor Standards Act ["FLSA"]. . . or any similar . . . state . . . law or amendment to a law; or
>
> (b) alleging, arising out of, based upon or attributable to any of the circumstances described in any of the following:
>
> (i) the refusal, failure or inability of any Insured to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion); [or]
>
> \*   \*   \*
>
> (iii) failure to provide or enforce legally required meal or rest

1      break periods; . . .

2    *Id.* at 40.

3         **D.      Coverage Dispute with Westchester**

4         West Marine demanded coverage for the Underlying Actions under a Westchester Policy

5    issued to the parent company of West Marine.  *Id.* at 15.  This Policy obligates Westchester to:

6              [p]ay the **Loss** of the **Insureds** which the **Insureds** have become
             legally obligated to pay by reason of an **Employment Practices**
7              **Claim** first made against the **Insureds** during the **Policy Period** or,
             if elected, the **Extended Period** . . . for an **Employment Practices**
8              **Wrongful Act** taking place prior to the end of the **Policy Period**.

9    *Id*. at 106 (emphasis in original).  "Employment Practices Claim" is defined to mean, in pertinent

10   part, "b) a civil, judicial, administrative, regulatory, arbitration or mediation proceeding against an

11   Insured seeking monetary damages or nonmonetary or injunctive relief . . . brought by or on behalf

12   of an Employee in their capacity as such."  *Id*. at 107.  The Westchester Policy specifies thirteen

13   types of  "Employment Practices Wrongful Acts," three of which are at issue here:  (1) "breach of

14   an actual or implied employment contract"; (2) "employment-related . . . misrepresentation"; and

15   (3) the "wrongful failure or refusal to adopt or enforce workplace or employment practices,

16   policies or procedures."  *Id*. at 107.

17        In addition, pursuant to subsection 4 of Section C [Exclusions], insurance under

18   Westchester's Employment Practices Coverage Section is subject to the following exclusion:

19             Insurer shall not be liable to make payment for **Loss** under
            this Coverage Section on account of any **Claim**:
20

21                                    ***

22             2.       alleging, based upon, arising out of, attributable to, directly or
            indirectly resulting from, in consequence of, or in any way involving:
23             (i) improper payroll deductions, unpaid wages, misclassification of
            exempt or non-exempt employee status, compensation earned by or
            due to the claimant but not paid by the **Insured** (including but not
24             limited to commission, vacation and sick days, retirement benefits,
            and severance pay), overtime pay for hours actually worked or labor
25             actually performed by an **Employee** of a **Company**, or any violation
            of any federal, state, local or foreign statutory law or common law
26             that governs the same topic or subject, or any rules, regulations or
            amendments thereto; or (ii) any violation of the responsibilities,

27   Case No.: 5:21-cv-01940-EJD

28   ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART
     WESTCHESTER'S MOTION TO DISMISS

1

2

3

> obligations or duties imposed by the [FLSA] (except the Equal Pay Act), as amended, or any rules or regulations promulgated thereunder, or similar provisions of any common or statutory federal, state, local, or foreign law.  Provided, however, this exclusion does not apply to any back pay or front pay allegedly due as a result of discrimination, or that party of any such **Claim** alleging **Retaliation**[.]

4    *Id*. at pp. 109-10 (emphasis in original) (the "Westchester Exclusion").

5          As to the duty to defend, Endorsement No. 7 of the Westchester Policy provides, in part,

6    that, "with respect to any Claim which is in part excluded from coverage pursuant to Section C.,

7    Exclusions, subsection 4 of the Employment Practices Coverage Section ("**FLSA and Related**

8    **Claim**"), "it shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend any **Claim**

9    and the **Insured** must select a **Panel Counsel Firm** to defend such **Claim**."  *Id*. at p. 155

10   (emphasis in original).

11          **E.    West Marine Files Suit**

12          West Marine filed this coverage litigation against National Union and Westchester in state

13   court, and National Union subsequently removed the action to this Court.[1]  The Complaint

14   consists of eight causes of action:  (1) breach of contract against National Union for failing to

15   defend and indemnify against the *Adams* Action; (2) tortious breach of the implied covenant of

16   good faith and fair dealing against National Union; (3) declaratory relief against National Union;

17   (4) breach of contract against Westchester for failing to defend and indemnify against the *Adams*

18   Action; (5) breach of contract against Westchester for failing to defend and indemnify against the

19   *Wade* Action; (6) breach of the implied covenant of good faith and fair dealing against

20   Westchester; (7) declaratory relief against Westchester; and (8) declaratory relief against Does 1

21   through 10.  *Id*. at 17–26.

22   **II.    STANDARDS**

23          A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the

24   complaint.  Fed. R. Civ. P. 12(b)(6); *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th

25

26

27

28

---

[1]  A third defendant, Federal Insurance Company, has been voluntarily dismissed from the case. Dkt. No. 20.

United States District Court
Northern District of California

1   Cir. 2011).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter,

2   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

3   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

4   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

5   reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

6   678 (citation omitted).

7          In ruling on the motion, the Court may consider the complaint, any exhibits thereto, and

8   matters which may be judicially noticed.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

9   308, 322 (2007).  When reviewing the complaint, the court must accept as true all "well pleaded

10  factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to

11  relief."  *Iqbal*, 556 U.S. at 679.  The court must also construe the alleged facts in the light most

12  favorable to the plaintiff.  *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768

13  F.3d 938, 945 (9th Cir. 2014).  However, "courts are not bound to accept as true a legal conclusion

14  couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.  Dismissal "is proper only where there is

15  no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

16  theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

17  **III.    DISCUSSION**

18          **A.    West Marine's Request for Discovery**

19          As an initial matter, West Marine contends that the motions to dismiss should be denied

20  because it has not yet had the opportunity to develop and present extrinsic evidence bearing on the

21  interpretation and application of the policies at issue.  West Marine proposes conducting discovery

22  into Defendants' (1) underwriting and negotiation of the policies, (2) drafting of the policies, (3)

23  claims-handling files; and (4) handling of claims submitted by other insureds.

24          The request for discovery is denied.  "A party's assertion of ambiguity does not require the

25  district court to allow additional opportunities to find or present extrinsic evidence" if the court

26  considers the contract language and "concludes that the language is reasonably susceptible of only

27

28  Case No.: 5:21-cv-01940-EJD
    ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART
    WESTCHESTER'S MOTION TO DISMISS
                                              7

one interpretation." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017–18 (9th Cir.

2012) (affirming dismissal under Rule 12(b)(6)).  That conclusion can be reached on a motion to

dismiss.  *Id.* (citing *Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, (2010) (holding that trial

court properly dismissed, without leave to amend, plaintiff's complaint by taking judicial notice of

contract terms and concluding they were not reasonably susceptible to plaintiff's proposed

interpretation)).[2]  The policies at issue in this case are not ambiguous, and moreover, West Marine

has failed to explain how the discovery it seeks would assist in clarifying any ambiguities.  West

Marine does not, for example, point to any language in the policies at issue where "the parties

intended one thing but the [policies] provide[] for another" such that discovery could potentially

reveal the parties' true contractual intent.  *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564,

569 (9th Cir. 1988).  Instead, West Marine raises only the theoretical possibility that extrinsic

evidence may exist that could expose an ambiguity in the policies at issue.  None of the cases

relied upon by West Marine suggests that a party who makes only a bare allegation that a contract

is ambiguous must be afforded an opportunity to pursue extrinsic evidence.[3]  At a minimum, West

---

[2] *See also Houston Cas. Co. v. Great Am. Chicken Corp., Inc.*, No. 19-1337 JFW (RAOx), 2019 WL 3886484, at *6 (C.D. Cal. Aug. 12, 2019) (concluding that parties' argument that the phrase "wage and hour laws" is ambiguous was disingenuous); *U.S. TelePacific Corp. v. U.S. Specialty Ins. Co.*, No. 18-5083 DMG (AGRx), 2019 WL 2590171, at *5–10 (C.D. Cal. June 18, 2019), *aff'd*, 815 F. App'x 155 (9th Cir. 2020) (dismissing because plain language of policy precluded coverage for wage and hour class actions); *Granite Outlet, Inc. v. Hartford Cas. Ins. Co.*, 190 F. Supp. 3d 976, 985 (E.D. Cal. 2016) (dismissing suit because plain language of exclusion for "Employment Related Practice" precluded coverage for alleged failure to pay wages and penalties); *E.H. Summit, Inc. v. Carolina Cas. Ins. Co.*, No. 16-00307 SVW, 2016 WL 7496142, at *8 (C.D. Cal. Feb. 24, 2016) (dismissing suit because plain language of policy precluded coverage for wage and hour class action).

[3] *See e.g.*, *Columbia Cas. Co. v. Nw. Nat'l Ins. Co.*, 231 Cal. App. 3d 457, 470 (1991) (holding that parol evidence was admissible to interpret a policy that was "[m]ore a vehicle for Jesuitical or Talmudic debate than a definition of the rights and obligations of the parties to the contract"); *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39–40 (1968) (holding that the court erroneously refused to consider extrinsic evidence offered to prove the meaning of a provision to which it was reasonably susceptible); *Stephens v. City of Vista*, 994 F.2d 650, 656–57 (9th Cir. 1993) (holding that trial court did not err in admitting extrinsic evidence relevant to prove meaning to which contractual language [was] reasonably susceptible"); *A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.*, 852 F.2d 493, 496 n.2 (9th Cir. 1988) (holding that the court erred in admitting parol evidence "that advances an interpretation to which the language of the contract is not reasonably susceptible").

Case No.: 5:21-cv-01940-EJD

ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART WESTCHESTER'S MOTION TO DISMISS

8

United States District Court
Northern District of California

1   Marine must articulate a plausible "claim that extrinsic evidence renders the contract ambiguous"

2   before the Court will allow discovery to proceed.  *See Atlanta Cancer Care, P.C. v. Amgen, Inc.*,

3   359 F. App'x 714, 716 (9th Cir. 2009).  West Marine has not done so.

**B.      The National Union Policy Does Not Provide Coverage for *Adams***

5   National Union contends that the *Adams* Complaint alleges claims predicated entirely on

6   wage and hour violations, not EPVs.  West Marine counters that the *Adams* Complaint includes

7   explicit and implicit allegations falling within three categories of the EPV definition.  Each

8   category of EPV is addressed below.

**1.      *Adams* Does Not Allege a Claim For Breach of an Implied Contract**

10  The *Adams* Action does not fall within Category 1 of the EPV definition.  That Category

11  provides coverage for a claim for "wrongful dismissal, discharge or termination (either actual or

12  constructive) of employment, including breach of an implied contract."  Dkt. No. 1-1 at 54.  Even

13  though the *Adams* Complaint does not explicitly allege any of the foregoing, West Marine argues

14  that the alleged wage and hour laws violations effectively constitute a breach of an implied

15  contract claim.  The argument is unpersuasive because the language preceding "breach of an

16  implied contract," indicates that for purposes of the Policy, the covered "breach of an implied

17  contract" is a type of "wrongful dismissal, discharge or termination."  The Policy does not provide

18  coverage for any other type of breach of implied contract.

19  Further, West Marine's reliance on *Travelers Cas. & Sur. Co. of Am. v. Spectrum Glass

20  Co*., *Inc.*, No. 11-1324 JCC, 2012 WL 3780356, at *6 (W.D. Wash. Aug. 31, 2012), is misplaced

21  because that case is distinguishable.  In *Spectrum*, the policy at issue provided coverage for the

22  defense of claims arising out of "Wrongful Employment Practices," which the policy defined to

23  include breach of employment agreement.  *Id*. at *1.  The parties disputed coverage of a claim for

24  breach of an implied agreement to pay employees for time worked, holidays, and meal and rest

25  breaks in accordance with terms stated in an employee handbook.  *Id*.  at *6.  Inasmuch as the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   claim was predicated on the employee handbook, the *Spectrum* court concluded that it was

2   "perfectly conceivable that the breach of contract claim was not a wage-and-hour claim" within

3   the meaning of the insurance policy.  *Id.*

4        In contrast, West Marine's theoretical breach of an implied contract is based entirely on

5   alleged violations of the CLC, not an employee handbook.  Therefore, there is no coverage.  *PHP*

6   *Ins. Serv., Inc. v. Greenwich Ins. Co.*, No. 15-435 BLF, 2015 WL 4760485 (N.D. Cal. Aug. 12,

7   2015) (rejecting theory that "every employment contract has as an implied obligation an

8   employer's compliance with the [California Labor Code]").  The *PHP* court rejected the implied

9   breach of contract theory being asserted here, reasoning that there is no binding or even persuasive

10  case authority holding that every oral employment contract in California carries with it the implied

11  contractual obligation to comply with the CLC, and that "[m]ore fundamentally, accepting PHP's

12  argument would eviscerate the Policy's express exclusions and create a tempting moral hazard."

13  *Id.* at *5.  The Seventh Circuit explained the "moral hazard" as follows:

> Insurance against a violation of an overtime law, whether federal or
> state, would enable the employer to refuse to pay overtime and then
> invoke coverage so that the cost of the overtime would come to rest
> on to the insurance company. The employer would have violated the
> overtime law with impunity, unjustly enriching itself by the difference
> between the overtime wage for the hours in question and the straight
> wage. No insurance company would knowingly write a policy that
> would enable the insured to trigger coverage any time it wanted a
> windfall.

19  *Id.* (quoting *Farmers Auto. Ins. Ass'n v. St. Paul Mercury Ins. Co.*, 482 F.3d 976, 978-79 (7th Cir.

20  2007)).  Accepting West Marine's argument for coverage in this case would likewise create a

21  tempting moral hazard.

### 2.   *Adams* Action Does Not Allege a Claim for "Employment-Related Misrepresentations"

24       West Marine's reliance on Category 5 of the EPV definition is also unavailing.  That

25  Category provides coverage for a claim for "employment-related misrepresentation(s) to an

26  Employee of any Organization."  Dkt. No. 1-1 at 54.  There is only one claim in the *Adams*

27

28  Case No.: 5:21-cv-01940-EJD
ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART
WESTCHESTER'S MOTION TO DISMISS

Complaint that could conceivably be construed as an "employment-related misrepresentation": the seventh cause of action for violation of CLC § 226(a), which requires employers to furnish employees with accurate itemized statements. But California federal courts have routinely rejected the argument that an alleged violation of CLC § 226(a) is an "employment-related misrepresentation" claim for insurance coverage purposes. *See*, *e.g.*, *Cal. Dairies Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1048–50 (E.D. Cal. 2009) (rejecting argument that violation of CLC § 226(a) was covered as claim for an employment-related implied misrepresentation), *aff'd*, 462 F. App'x 721, 723 (9th Cir. 2011); *Gauntlett v. Ill. Union Ins. Co.*, No. 11–00455 EJD, 2011 WL 5191808, at *7–8 (N.D. Cal. Nov. 1, 2011) (same); *United Farm Workers of Am. v. Hudson Ins. Co.*, No. 18-01234 JLT, 2019 WL 1517568, at *15–16 (E.D. Cal. Apr. 8, 2019) (same). In *Cal Dairies*, the court reasoned that a misrepresentation is not a required element of CLC violations and that it would be a "strained interpretation of the Policy language" to construe wage statements themselves as some form of implied representation the employer was "complying with the law regarding benefits." 617 F. Supp. 2d at 1050. As in *Cal Dairies*, the Adams cause of action for violation of CCL § 226(a) is not a covered claim under the National Union Policy.

Apart from the seventh cause of action, West Marine argues that allegations in paragraphs 35 through 37 in the body of the *Adams* Complaint trigger coverage. This argument is also unpersuasive. Paragraph 35 alleges that Defendants failed to provide complete or accurate wage statements. Dkt. No. 101 at 411. Paragraph 36 alleges that Defendants failed to keep complete or accurate payroll records. *Id*. Paragraph 37 alleges that Defendants "falsely represented to Plaintiffs . . . that they paid all wages owed to them, all in order to increase Defendants' profits." *Id*. These paragraphs set forth background allegations, not Claims for an EPV within the meaning of the National Union Policy. On this basis alone, there is no coverage. *See TelePacific*, 2019 WL 2590171, at *9-10 (rejecting argument single allegation that company falsely represented to employees they were properly classified as exempt managers and allegations that employer disseminated inaccurate wage statements constitute claims for employment-related

United States District Court
Northern District of California

misrepresentations).  Furthermore, these allegations serve only as the predicate for the claims for CLC violations pertaining to wage statements and payroll records. Therefore, under the logic of *Cal Dairies*, these paragraphs do not trigger coverage any more than the seventh cause of action triggers coverage.

West Marine relies on *Prof'l Sec. Consultants, Inc. v. U.S. Fire Ins. Co.*, No. 10-4588 SJO, 2010 WL 4123786, at *3 (C.D. Cal. Sept. 22, 2010) ("*PSC*"), however that case is distinguishable. In *PSC*, the policy at issue provided coverage for any "employment-related misrepresentation." *Id*.  The parties disputed coverage for a suit alleging that the employer "disseminated false information throughout [the employer's] facilities . . . reciting that, under [the employer's] labor policies and practices and under California law, the members of the Illegal Wages Class were not entitled to overtime compensation."  *Id*. at *3.  The *PSC* court held that the plaintiff pled sufficient facts to state a claim for breach of the duty to defend and indemnify.  *Id*.  Unlike in *PSC*, the *Adams* Complaint does not allege dissemination of false information throughout the employer's facilities.  Rather, the *Adams* Complaint alleges West Marine "falsely represented" that employees were paid all wages owed to them.  Dkt. No. 1-1 at 411.  There are only two factual allegations that could conceivably support the false representation referenced in Paragraph 37:  the allegedly inaccurate wage statements and payroll records.  And as discussed previously, the alleged inaccurate wage statements and payroll records do not trigger coverage.

### 3.    *Adams* Does Not Allege a Claim for Failure to Provide or Enforce Adequate or Consistent Corporate Policies and Procedures

West Marine's reliance on Category 12 of the EPV definition is also unavailing.  That Category provides coverage for claims "with respect to any of the foregoing items (1) through (11) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights."  Dkt. No. 1-1 at 6.  Contrary to West Marine's assertion, the National Union Policy does not provide coverage for any alleged failure to

Case No.: 5:21-cv-01940-EJD
ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART WESTCHESTER'S MOTION TO DISMISS

provide or enforce corporate policies and procedures.  Rather, the National Union Policy is narrower, covering only claims for failure to provide or enforce corporate policies and procedures "with respect to" the other eleven categories of EPV.[4]  As discussed above, the *Adams* Action does not allege a claim for an EPV.  All of the claims asserted in *Adams* are for wage and hour violations or are derivative of the alleged wage and hour violations.  Therefore, there is no coverage under Category 12.  *N.H. Ball Bearings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 13–06114 DDP (AGRx), 2014 WL 935120, at *4-5 (C.D. Cal. Mar. 10, 2014) (rejecting an argument for general "policies and procedures" coverage because the plain policy language requires policies and procedures "relating to any [other] Employment Practices Violation").

### 4.   Exclusion 6 Precludes Coverage For Claims Alleging Violations of Laws Similar to the FLSA

For the reasons discussed above, West Marine's claims against National Union Policy fail because the underlying *Adams* Action does not fall within the basic scope of  National Union's Employment Practices Liability Coverage.  A second flaw with West Marine's claims against National Union is that the Wage and Hour Exclusion ("Exclusion (6)") separately and independently precludes coverage for the *Adams* Action.

### a.   Exclusion 6, Subsection (a)

Subsection (a) of Exclusion (6) precludes coverage for Claims for violations of "responsibilities, obligations or duties imposed by the [FLSA], . . . any rules or regulations promulgated thereunder, . . . or any similar . . . state . . . law or amendment to a law."  Dkt. No. 1-1 at 40.  The CLC provisions governing overtime wages, minimum wages, and meal and rest breaks are similar to provisions of the FLSA.  *See, e.g.*, *Cal. Dairies*, 617 F. Supp. 2d at 1040–44, 1050– 51 (coverage precluded for claims for minimum wages, overtime wages, meal and rest periods and

---

[4] In contrast, the policy in *PacPizza, LLC v. Certain Underwriters at Lloyd's London*, Case No. C18-00249 (Contra Costa Super. Ct. July 12, 2018) provided broader coverage of  "Inappropriate Employment Conduct," which was defined to include "any failure to adopt, implement or enforce employment related policies or procedures."

derivative UCL claim, because the underlying statutes are "similar" to FLSA); *TelePacific.*, 2019

WL 2590171, at *5–10 (same); *Gauntlett*, 2011 WL 5191808, at *7 (coverage precluded for

statutory wage and hour and derivative claims, including UCL claims, because underlying statutes

are "similar" to FLSA); *TriTech Software Sys. v. U.S. Special Ins. Co.*, No. 10-00094 R (VBKx),

2010 WL 5174371, at *6-7 (C.D. Cal. Dec. 13, 2010) (coverage precluded for CLC and UCL

claims for overtime pay, meal and rest breaks, and failure to provide proper pay stubs because the

underlying statutes are "similar" to FLSA); *Payless Shoesource Inc. v. Travelers Cos., Inc.*, 585

F.3d 1366, 1373, 1375–76 (10th Cir. 2009) (coverage precluded for CLC and UCL claims for

overtime pay and meal and rest breaks because the underlying statutes are "similar" to the FLSA).

Therefore, subsection (a) of Exclusion (6) precludes coverage for the *Adams* Action.[5]

### b.      Exclusion 6, Subsection (b)

Subsection (b) of Exclusion (6) also precludes coverage for the *Adams* Action.  Subsection

(b) precludes coverage for any Claim "alleging, arising out of, based upon or attributable to": (i)

the refusal, failure or inability of any Insured to pay wages or overtime pay (or amounts

representing such wages or overtime pay) for services rendered or time spent in connection with

work related activities . . .; [or] (iii) failure to provide or enforce legally required meal or rest

break periods."  Dkt. No. 1-1 at 40.  California courts have consistently given a broad

---

[5] The parties dispute whether a few claims in the *Adams* Action, particularly the CLC section 226(a) and 1174 claims, are excluded under subsection (a) of Exclusion (6).  The dispute centers on the difference, if any, between the phrase "any similar . . . state . . . law or amendment to a law" and the phrase "any similar *provision* of federal state or local statutory law or common law."  The court in *Cal Dairies* concluded that the latter phrase did not exclude from coverage claims for accurate wage statements and payroll records.  *Cal. Dairies*, 617 F. Supp. 2d at 1046 (finding that "[n]either the FLSA nor its implementing regulations require such wage statements."); *see also PHP*, 2015 WL 4760485, at *8 (finding section 226 claim was not expressly excluded from coverage); *but see S. Cal. Pizza Co., LLC v. Certain Underwriters at Lloyd's, London Subscribing to Policy No. 11EPL-20208*, 40 Cal. App. 5th 140, 154 (2019) ("*SoCal Pizza*") ("Because section 226 is a 'wage and hour law,' the cause of action in the underlying lawsuit alleging a violation thereof fell within the scope of the Policy's wage and hour exclusion.").  Arguably, the phrase "any similar . . . law" in National Union's Policy provides a broader exclusion than the phrase "any similar provision" of law.  In any event, the dispute is an academic one because none of the claims in the *Adams* Action fall within the basic scope of National Union's Employment Practices Liability Coverage.  Furthermore, subsection (b) of Exclusion (6) applies to the section 226(a) and 1174 claims for the reasons stated in the next subsection of this Order.

1    interpretation to the terms "arising out of" in insurance policies.  *See Acceptance Ins. Co. v. Syufy*

2    *Enters.*, 69 Cal. App. 4th 321, 328 (1999); *see also L.A. Lakers v. Fed. Ins. Co.,* 869 F.3d 795, 801

3    (9th Cir. 2017) (same).  The term "arising out of" and "based on" require "only a 'slight

4    connection' or 'incidental relationship' between the injury and the excluded risk."  *Century*

5    *Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 127 n.4 (1996);

6    *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 830 (2006) (same).

7          All of the claims in the *Adams* Action have more than a slight connection or incidental

8    relationship between the alleged injuries and the excluded risks.  They allege either a failure to pay

9    wages, failure to provide meal and rest breaks, or matters that arise out of such alleged conduct

10   (such as allegedly inaccurate wage statement and payroll records and failure to pay wages in a

11   timely manner).  West Marine insists that the section 226(a) claim for failure to include total hours

12   worked and failure to provide correct overtime rate, as well as other claims "have nothing to do

13   with the failure to pay wages, deductions or meal and rest breaks."  West Marine Opp'n to

14   National Union's Mot. to Dismiss at 9.  The *Adams* Complaint indicates otherwise.  Adams

15   alleges that West Marine engaged in a "systematic scheme of wage abuse" wherein West Marine

16   failed to pay, and therefore failed to reflect on wage statements and payroll, the hours that its

17   employees actually worked and the premium hourly rates associated with overtime and missed

18   meal and rest breaks.  Dkt. No. 1-1 at 407, 411, 418–420.  Similarly, the alleged failure to pay

19   wages in a timely manner in violation of CLC §§ 201 and 202 is "based on" or "arises out of" the

20   alleged failure to pay minimum wages, overtime wages, meal and rest break premiums and

21   bonuses.  *Id*. at 417.  Adams does not plead any other factual basis for the alleged failure to pay

22   wages in a timely manner.  Likewise, Adams's UCL and PAGA claims are entirely derivative of

23   the alleged wage and hour violations.[6]  Subsection (b) of Exclusion (6) therefore precludes

24   _____

25   [6] Within the UCL claim, Adams alleges "Defendants also violated California Labor Code sections
     . . . 2800 and 2802."  Dkt. No. 1-1 at 421. The references to sections 2800 and 2802 are likely to
26   be inadvertent, given that there are no factual allegations to support a violation of these sections.
     To the extent the UCL cause of action may be predicated on an alleged failure to reimburse
27   business expenses, it does not fall within any EPV category of National Union's Employment
     Case No.: 5:21-cv-01940-EJD
28   ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART
     WESTCHESTER'S MOTION TO DISMISS

United States District Court
Northern District of California

coverage for the *Adams* Action as a matter of law.  *See*, *e.g.*, *N.H. Ball Bearings*, 2014 WL 935120, at *5 (exclusion "clearly applies" to causes of action for inaccurate wage statements and failure to pay wages, give meal and rest breaks, and the like, because they "arise directly from a 'failure to pay wages' . . . and/or 'improper deductions from pay'"); *SoCal Pizza*, 40 Cal. App. 5th 140, 154.

The first cause of action against National Union for breach of the duty to indemnify and defend the *Adams* Action and the third cause of action for declaratory relief are dismissed.

### 5. Bad Faith Claim Fails

West Marine's second cause of action for bad faith against National Union fails because there is no coverage. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995) (quoting *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990)) ("a bad faith claim cannot be maintained unless policy benefits are due"); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 784 (2010) (same).  The second cause of action is dismissed.

### C. The Westchester Policy Does Not Provide Coverage for the *Adams* Action

Westchester contends that its Policy does not provide coverage for the *Adams* Action because (1) the Action does not assert Employment Practices Claims for "Employment Practices Wrongful Acts" within the meaning of the Westchester Policy, and (2) the Westchester Exclusion applies.

### 1. The *Adams* Action Does Not Assert "Employment Practices Wrongful Acts" for (i) Breach of Implied Contract and (ii) Employment-Related Misrepresentation

West Marine contends that the *Adams* Action alleges three types of "Employment Practices Wrongful Acts" that are covered by the Westchester Policy:  breach of an actual or implied employment contract; employment-related misrepresentation; and wrongful failure or refusal to adopt or enforce workplace or employment practices, policies or procedures.  The argument fails as to the first two types of "Employment Practices Wrongful Acts" for the reasons

Practices Liability Coverage.

United States District Court
Northern District of California

1    already discussed above regarding the National Union Policy.

2         Arguably, there are some allegations in the *Adams* Action that could be characterized as

3    the third type of "Employment Practices Wrongful Acts," that is, wrongful failure or refusal to

4    adopt or enforce workplace or employment practices, policies or procedures.  *See e.g.*, Dkt. No. 1-

5    1 at 407 (Defendants "engaged in a uniform policy and systematic scheme of wage abuse" that

6    involved requiring working off the clock without compensation, and failing to provide meal

7    periods and rest periods).  Nevertheless, even if the *Adams* Action includes the third type of

8    "Employment Practices Wrongful Acts," there is no coverage because the Westchester Exclusion

9    applies for the reasons discussed below.

10              **2.    The Westchester Exclusion Applies to the *Adams* Action**

11        In pertinent part, the Westchester Exclusion extends to claims "alleging, based upon,

12   arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any

13   way involving" (1) unpaid wages "or any violation of any federal, state, local or foreign statutory

14   law or common law that governs the same topic or subject, or any rules, regulations or

15   amendments thereto" or (2) "any violation of the responsibilities, obligations or duties imposed by

16   the [FLSA] (except the Equal Pay Act), as amended, or any rules or regulations promulgated

17   thereunder, or similar provisions of any common or statutory federal, state, local, or foreign law."

18   Dkt. No. 101 at 109-10.  The prefatory language is "extremely broad."  *See Landmark Am. Ins.*

19   *Co. v. Navigators Ins. Co.*, 354 F. Supp. 3d 1078, 1082 (N.D. Cal. 2018) ("'in any way involving'

20   is the broadest"); *Columbia Cas. Co. v. Abdou*, No. 15-80 LAB, 2015 WL 9244305, at *3 (S. D.

21   Cal. Dec. 16, 2015) (holding that "in any way involving" "is 'language that would only be

22   included to maximally expand the enumerated categories of acts that are excluded from

23   coverage'").

24        Here, the claims in the *Adams* Action fall within both exclusions.  As discussed previously,

25   the *Adams* Action consists entirely of claims "alleging, based upon, arising out of, attributable to,

26   directly or indirectly resulting from, in consequence of, or in any way involving" unpaid wages.

27
Case No.: 5:21-cv-01940-EJD
28   ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART
     WESTCHESTER'S MOTION TO DISMISS

United States District Court
Northern District of California

The *Adams* Action also consists entirely of claims alleging violations of responsibilities, obligations or duties imposed by statutory provisions that are similar to the FLSA.  Accordingly, Westchester has no duty to indemnify or defend the *Adams* Action.

The fourth cause of action for breach of contract based on the *Adams* Action and the portion of the seventh cause of action for declaratory relief directed to the *Adams* Action are dismissed.

### D.   Westchester Policy Coverage For The *Wade* Action

In the fifth cause of action for breach of contract, West Marine alleges that Westchester breached its duty to indemnify and to defend in the *Wade* Action.  Each duty is discussed separately below.

### 1.   Duty to Indemnify

There is no coverage under the Westchester Policy for nearly all of the alleged conduct in the *Wade* Action for the same reasons there is no coverage for the *Adams* Action.  In brief, the *Wade* Action does not allege a breach of implied contract or a misrepresentation that would qualify as a covered "Employment Practices Wrongful Act."  Furthermore, the *Wade* Complaint consists almost entirely of CLC violations "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving" unpaid wages.  The *Wade* Complaint also consists almost entirely of violations of responsibilities, obligations or duties imposed by statutory provisions that are similar to the FLSA.

There are, however, two potential bases for coverage:  (1) the alleged failure to reimburse employees for necessary business-related expenses and costs in violation of CLC §§ 2800 and 2802, and (2) the alleged failure to provide adequate seating to employees.  Dkt. No. 1-1 at 439-40, 442.  These allegations suggest a "wrongful failure or refusal to adopt or enforce workplace or employment practices, policies or procedures" that would be covered as an "Employment Practices Wrongful Act."  Further, these allegations may not be subject to the Westchester Exclusion because they are unrelated to wages.  *Cal. Dairies*, 617 F. Supp. 2d at 1044-47 (CLC §

United States District Court
Northern District of California

Case No.: 5:21-cv-01940-EJD
ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART WESTCHESTER'S MOTION TO DISMISS
18

1   2802 has "no close parallel" in the FLSA); *SoCal Pizza*, 40 Cal. App. 5th at 151 ("Given section

2   2802's language, function and purpose, it is unsurprising our Supreme Court previously

3   characterized claims seeking reimbursement of business expenses as 'nonwage' claims.").

4       Accordingly, the motion to dismiss the fifth cause of action for breach of contract is

5   granted in part and denied in part as to the duty to identify.  West Marine may only proceed with

6   this claim to the extent the duty to indemnify the PAGA claim is based on (1) the alleged failure to

7   reimburse employees for necessary business-related expenses and costs in violation of CLC §§

8   2800 and 2802, and (2) the alleged failure to provide adequate seating to employees.

9           **2.       Westchester Has No Duty to Defend The *Wade* Action**

10      Under the Westchester Policy, the insured, West Marine, has the duty to defend against

11  claims which are excluded, "in part," by the Westchester Exclusion.  Dkt. No. 1-1 at 155.

12  Specifically, Endorsement No. 7 of the Westchester Policy provides, in pertinent part:

13          It is agreed that with respect to any Claim which is in part excluded
            from coverage pursuant to Section C., Exclusions, subsection 4 of the
14          Employment Practices Coverage Section (**FLSA and Related
            Claim**") . . . .
15
            1. It shall be the duty of the **Insureds** and not the duty of the **Insurer**
16          to defend any **Claim** and the **Insured** must select a **Panel Counsel
            Firm** to defend such **Claim**. The **Insurer's** liability for **Costs,
17          Charges and Expenses** incurred as a result of the employment of
            such **Panel Counsel Firm** shall be no greater than the **Insurer's**
18          negotiated rates with such **Panel Counsel Firm.**"

19

20  *Id*. (emphasis in original).  As discussed previously, portions of the PAGA claim in the *Wade*

21  Action are excluded from coverage.  Accordingly, Westchester does not have a duty to defend

22  West Marine in the *Wade* Action.

23      The portion of the fifth cause of action that alleges a breach of the duty to defend must be

24  dismissed.

25          **E.       Sixth Cause of Action for Bad Faith**

26      West Marine's bad faith claim against Westchester fails to the extent it is based on the

27  Case No.: 5:21-cv-01940-EJD

28  ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART
    WESTCHESTER'S MOTION TO DISMISS

1    *Adams* Action because there is no coverage (*Waller*, 11 Cal. 4th at  36), but the claim is

2    cognizable to the extent it is based on the *Wade* Action.

3        The motion to dismiss the sixth cause of action is granted in part and denied in part.

4  **IV.   CONCLUSION**

5        For the reasons discussed above, National Union's motion to dismiss the first, second and

6  third causes of action is GRANTED.  The dismissal is without leave to amend because an

7  amendment would be futile.  *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no

8  abuse of discretion in denying leave to amend when amendment would be futile). Westchester's

9  motion to dismiss is GRANTED in part as follows:

10      • the fourth cause of action for breach of contract based on the *Adams* Action is

11        DISMISSED WITHOUT LEAVE TO AMEND;

12      • the fifth cause of action for breach of contract based the *Wade* Action is

13        DISMISSED WITHOUT LEAVE TO AMEND to the extent it is based on a duty

14        to indemnify West Marine for any settlement or judgment in the *Wade* Action

15        predicated on the following allegations:

16        a. Failing to pay Plaintiff and the Aggrieved Employees all earned
   minimum wage compensation in violation of Labor Code §§ 1194
17        and 1198, *et seq.*;

18        b. Failing to pay Plaintiff and the Aggrieved Employees all earned
   overtime compensation in violation of Labor Code §§ 204, 510,
19        1194, and 1198, *et seq.*;

20        c. Failing to provide legally required meal periods to Plaintiff and
   the Aggrieved Employees, and failing to pay Plaintiff and the
21        Aggrieved Employees an additional hour of premium pay for meal
   period violations in violation of Labor Code §§ 226.7 and 512;
22

23        d.  Failing to provide, authorize and permit Plaintiff and the
   Aggrieved Employees to take duty-free rest periods, and failing to
24        pay Plaintiff and the Aggrieved Employees an additional hour of
   premium pay for rest period violations in violation of Labor Code §§
25        226.7 and 512;

26        e. Failing to timely pay Plaintiff and the Aggrieved Employees all
   wages at end of their employment in violation of Labor Code § 203;

27

28 Case No.: 5:21-cv-01940-EJD
   ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART
   WESTCHESTER'S MOTION TO DISMISS

*United States District Court*
*Northern District of California*

f. Failing to timely pay Plaintiff and the Aggrieved Employees all wages owed during employment in violation of Labor Code § 204;

g. Failing to furnish Plaintiff and the Aggrieved Employees with complete, accurate, itemized wage statements in violation of Labor Code § 226; and

h. Failing to maintain accurate records relating to Plaintiff and the Aggrieved Employees' work periods, meal periods, total daily hours, hours per pay period, and applicable pay rates in violation of Labor Code § 1174; and

i. Failing to pay accrued but unused vacation time in violation of California Labor Code section 227.3;

- the fifth cause of action for breach of contract based the *Wade* Action is DISMISSED WITHOUT LEAVE TO AMEND to the extent that it is based on a duty to defend;

- the sixth cause of action for breach of the implied covenant of good faith and fair dealing is DISMISSED WITHOUT LEAVE TO AMEND to the extent it is based on the *Adams* Action; and

- the seventh cause of action for declaratory relief is DISMISSED WITHOUT LEAVE TO AMEND to the extent it is based on the *Adams* Action.

Westchester's motion is DENIED in all other respects.  No later than December 10, 2021, West Marine may file a narrowly tailored amended complaint against Westchester only that conforms to the Court's rulings above.

**IT IS SO ORDERED.**

Dated:  November 22, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-01940-EJD
ORDER GRANTING NATIONAL UNION'S MOTION TO DISMISS; GRANTING IN PART WESTCHESTER'S MOTION TO DISMISS

21